UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOSEPH STRONG,

                        Plaintiff,

v.                                                   Case # 17-CV-6183-FPG

                                                     DECISION AND ORDER

JOSEPH PERRONE,
MICHAEL CIMINELLI,
and CITY OF ROCHESTER

                        Defendants.
_____

## INTRODUCTION

Plaintiff Joseph Strong brings this action pursuant to 42 U.S.C. § 1983 (2012) against Defendants Police Officer Joseph Perrone, Police Chief Michael Ciminelli, and the City of Rochester for alleged violations of the Fourth and Fourteenth Amendments.[1] *See* ECF No. 1. Plaintiff claims that Defendants are liable for (1) unlawful entry under the Fourth Amendment; (2) unlawful deprivation of property under the Fourth Amendment; (3) excessive force under the Fourth Amendment; and (4) due process violations under the Fourteenth Amendment.[2] *See id.*

Plaintiff filed his Complaint on March 28, 2017. *Id.* On May 11, 2017, Defendants moved to partially dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 4. Chief Ciminelli and the City of Rochester seek dismissal of all of the claims against them, and

---

[1] While the Complaint also references the Eighth Amendment, ECF No. 1, at 1, Plaintiff does not argue any corresponding violation.

[2] As Defendants observe, Plaintiff's Reply Memorandum of Law (ECF No. 9) only addresses the arguments regarding municipal liability. *See* ECF No. 10, at 1. Plaintiff does not attempt to directly defend the underlying constitutional claims, Chief Ciminelli's individual liability, or Officer Perrone's individual liability. In responding to a motion to dismiss, the failure to defend claims can render them "abandoned," resulting in dismissal. *See, e.g.*, *Fero v. Excellus Health Plain, Inc.*, 236 F. Supp. 3d 735, 753–54 (W.D.N.Y. 2017). Here, because a theory of liability necessarily assumes some underlying claim, the Court addresses all of the challenged claims on the merits, but warns against failing to defend every claim in the future.

1

Officer Perrone seeks to dismiss only the claims of unlawful entry, excessive force, and due process violations. *See id.* For the reasons that follow, Defendants' Motion for Partial Dismissal is GRANTED.

## BACKGROUND[3]

On January 16, 2015, the Rochester Police Department received a call reporting a suspected burglary at Plaintiff's home, located at 123 Trafalgar Street in Rochester, New York. *See* ECF No. 1, at 5. Officer Perrone was one of the responding officers, and, when he arrived, he noticed that the doors to Plaintiff's home were open. *Id.* He proceeded onto the front porch and, upon seeing Plaintiff's pit bull inside the home, shot the dog through the open front door from his position on the porch. *Id.* at 4–5. The dog was injured by Officer Perrone's bullet, and animal control officers responded to the scene. *Id.* at 5–6. Because Plaintiff was not home, animal control officers called for his permission to euthanize the dog, which Plaintiff gave. *Id.* at 6. By the time Plaintiff returned home, the dog had been removed from the premises. *Id.* Officers ultimately determined that Plaintiff's doors had been blown open by the wind. *See id.* at 5.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) instructs that a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court clarified the requirements of Rule 8(a)(2) for "all civil actions." *Iqbal*, 556 U.S. at 684. To be sufficient, a pleading "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). In that vein, "[a] pleading that offers 'labels and conclusions' or 'a formulaic

---

[3] All facts are drawn from Plaintiff's Complaint (ECF No. 1).

recitation of the elements of a cause of action will not do.' " *Id.* (quoting *Twombly*, 550 U.S. at 555). Rather, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Id.* (quoting *Twombly*, 550 U.S. at 570). That measure of plausibility requires "more than a sheer possibility that a defendant has acted unlawfully"—the pleaded facts must permit a "reasonable inference" of liability for the alleged misconduct. *Id.*; *see also Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (instructing that "all reasonable inferences" are to be taken in the plaintiff's favor). Beyond the facts alleged in the complaint, a court may also consider "documents attached to the complaint as exhibits[] and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

## DISCUSSION

Plaintiff brings his claims pursuant to 42 U.S.C. § 1983 (2012), which provides that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

Section 1983 does not create any substantive rights; rather, it serves as a vehicle "for vindicating federal rights elsewhere conferred." *See, e.g.*, *Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) (quoting *Baker v. McCollan*, 443 U.S. 137, 133 n.3 (1979)). Plaintiff invokes § 1983 to assert claimed violations of the Fourth and Fourteenth Amendments against Defendants. *See* ECF No. 1.

Notably, however, each of Plaintiff's claims repeatedly refers to "violations of the rights secured . . . by the Fourth and Fourteenth Amendments . . . and § 1983." *See id.* at 6–14. The Court seeks to clarify that—as discussed—§ 1983 does not confer substantive rights upon Plaintiff, and Plaintiff's joint invocation of the Fourth and Fourteenth Amendments is inapposite. The Fourth

3

Amendment protects against "unreasonable searches and seizures." U.S. Const. amend. IV. Accordingly, it governs Plaintiff's claims of unlawful entry, unlawful deprivation of property, and excessive force. *See Albright v. Oliver*, 510 U.S. 266, 273 (1994). The Fourteenth Amendment would only be relevant to those claims in that it makes the Fourth Amendment applicable to Defendants, *see, e.g.*, *Tenenbaum v. Williams*, 193 F.3d 581, 602 n.14 (2d Cir. 1999), but it does not affect the Court's analysis of the claims under the Fourth Amendment, *see Albright*, 510 U.S. at 273. The Fourteenth Amendment guarantees Plaintiff substantive and procedural due process. *See* U.S. Const. amend. XIV § 1; *see also, e.g.*, *Vaher v. Town of Orangetown*, 133 F. Supp. 3d 574, 601 (S.D.N.Y. 2015). Accordingly, Plaintiff's claim of due process violations involves the Fourteenth Amendment, not the Fourth Amendment.

## II. Claims Against the City of Rochester

Plaintiff seeks to hold the City of Rochester liable on each of his four claims. *See* ECF No. 1, at 6–14. He argues that the City was deliberately indifferent "to an obvious need for training of its officers both in the laws pertaining to unlawful seizures, in the art of de-escalation, and in how to avoid conflict and especially lethal conflict when dealing with canines." *Id.* at 9. Plaintiff maintains that the "deliberate indifference" evinced in the City's alleged failure to train its officers as described "resulted in Defendant Officer Perrone's actions in slaying [the dog]." *Id.*

A municipality cannot be held vicariously liable under § 1983 for the actions of its employees. *Connick v. Thompson*, 563 U.S. 51, 60 (2011). Rather, the municipality must "itself 'subject' a person to a deprivation of rights or 'cause[]' a person 'to be subjected' to such deprivation." *Id.* Thus, to hold a municipality liable under § 1983, a plaintiff must show that the complained-of injury came from "action pursuant to official municipal policy." *Id.* at 60–61 (quoting *Monell v. Dep't of Social Servs. of N.Y.C.*, 436 U.S. 658, 694 (1978)).

4

While "official municipal policy" logically encompasses actual procedures—for example, "the decisions of a government's lawmakers, the acts of its policymaking officials, [or] practices so persistent and widespread as to practically have the force of law"—it can also include the absence of necessary procedures. *Id.* at 61. A municipality's failure to train its employees "about their legal duty to avoid violating citizens' rights" can be actionable if it "rises to the level of an official government policy." *Id.* That standard is exacting, though: the choice to forgo training "must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.' " *Id.* (alteration in original) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)); *see also id.* ("A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."). To be considered "deliberately indifferent," a municipality's inaction must stem from a "conscious choice"—not "mere negligence." *Cash v. County of Erie*, 654 F.3d 324, 334 (2d Cir. 2011). Typically, a plaintiff asserting *Monell* liability on the basis of a municipality's failure to train needs to show "a pattern of similar constitutional violations by untrained employees." *Connick*, 563 U.S. at 62.

As Defendants observe, Plaintiff fails to offer any example of another allegedly untrained Rochester police officer killing a dog. *See* ECF No. 1; ECF No. 10, at 2–3. While Plaintiff argues that he has pleaded a "widespread . . . violent, prolific, and barbarous practice" of "puppycide," ECF No. 9, at 3, his Complaint alleges only the following with respect to City policy:

> [T]he Defendant's violations were part of the customary practices of the City of Rochester and its police department. Such repeated Fourth and Fourteenth Amendment violations amount to . . . deliberate indifference . . . . This departmental failure [to train] includes and is most evident in the failures leading to the death of [the dog] . . . . Supervisors Police Chief Ciminelli and the City of Rochester were aware of the custom of dogs being killed by the Department due to a lack of any training and/or protocol as to how armed officers should act around companion animals.

5

ECF No. 1, at 8–9. Apart from the incident in question, Plaintiff fails to provide any facts to flesh out his conclusory recitation of the requisite showing for *Monell* liability.[4] This sort of formulaic and unadorned pleading is insufficient under *Iqbal*.[5] Accordingly, his claims against the City of Rochester must be dismissed.

### III. Claims Against Chief Ciminelli

Plaintiff also seeks to hold Chief Ciminelli liable on all claims. *See* ECF No. 1, at 6–14. To sufficiently plead individual liability under § 1983, Plaintiff must provide facts showing "[D]efendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138–39 (2d Cir. 2013). In *Colon v. Coughlin*, the Second Circuit instructed that

> [t]he personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation[;] (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong[;] (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom[;] (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts[;] or (5) the defendant exhibited deliberate indifference to the rights of [persons] by failing to act on information indicating that unconstitutional acts were occurring.

58 F.3d 865, 873 (2d Cir. 1995). Whether *Iqbal*'s pleading standard heightened the showings formerly sufficient under *Colon* does not affect the Court's analysis, because Plaintiff's claims against Chief Ciminelli fail to survive even *Colon*'s requirements. *See, e.g.*, *Grullon*, 720 F.3d at 139 (using the same approach).

---

[4] Moreover, this is not the sort of "rare" situation in which the consequences of failing to train are so predictable and obvious that a known pattern need not be pleaded for a claim of deliberate indifference. *See Connick*, 563 U.S. at 63–64 (citing *Canton*, 489 U.S. at 390, n.10). By comparison, *Canton*'s hypothesized sufficiency of single-incident proof involved a failure to train officers on the use of deadly force. *See* 489 U.S. at 390 n.10. The Supreme Court explained that the patent obviousness of those consequences could be inferred, given that "city policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons. The city has armed its officers with firearms, in part to allow them to accomplish this task." *Id.*

[5] In an attempt to offset the lack of facts, Plaintiff cites "the *Leatherman* case" as "a comparative example," *see* ECF No. 9, at 3—although no citation was provided, the Court understands Plaintiff to refer to *Leatherman v. Tarrant Cty. Narcotics Intelligence and Coordination Unit*, 507 U.S. 163 (1993). That reference provides no respite: *Leatherman* was decided pre-*Iqbal*, which now dictates the governing pleading standards.

Plaintiff alleges that Chief Ciminelli "w[as] aware of the custom of dogs being killed by the Department due to a lack of any training and/or protocol as to how armed officers should act around companion animals." ECF No. 1, at 9. Aside from an isolated reference to conspiracy,[6] this description is the only mention of Chief Ciminelli's purported misconduct. *See* ECF No. 1. With respect to the *Colon* factors, those assertions provide no actual facts suggesting: (1) that Chief Ciminelli directly participated in a Fourth or Fourteenth Amendment violation; (2) that Chief Ciminelli, after being informed of a Fourth or Fourteenth Amendment violation, failed to provide a remedy; (3) that Chief Ciminelli created or continued a policy or custom of Fourth or Fourteenth Amendment violations; (4) that Chief Ciminelli was grossly negligent in supervising Officer Perrone; or (5) that Chief Ciminelli was deliberately indifferent in failing to act on apparent Fourth or Fourteenth Amendment violations. Without more, Plaintiff's claims against Chief Ciminelli are the sort of conclusory assertions that cannot survive a motion to dismiss.

### IV.  Claims Against Officer Perrone

Of the four claims at issue, Officer Perrone moves to dismiss only the claims of unlawful entry, excessive force, and due process violations. For the reasons that follow, those claims against Officer Perrone are dismissed, and the only remaining claim is for unlawful deprivation of property.

### A.  Unlawful Entry

Plaintiff claims that Officer Perrone violated the Fourth Amendment when he "entered onto Plaintiff's premises" without Plaintiff's permission. ECF No. 1, at 7. The Fourth Amendment

---

[6] Plaintiff alleges that "Defendant Ciminelli and the City of Rochester then conspired to cover up the scene and remove all bullets from the house and surrounding area to try and conceal the fact that the shooting was criminal in nature," ECF No. 1, at 8, but he does not advance an actual claim of conspiracy.

protects against warrantless searches of a person's home, subject to certain exceptions.[7] *See, e.g.*, *Harris v. O'Hare*, 770 F.3d 224, 231–32 (2d Cir. 2014). While Plaintiff's front porch may have fallen within the physical "curtilage" considered an extension of the home, Officer Perrone simply approached the open front door, which he may do without a warrant. *See, e.g.*, *Florida v. Jardines*, 569 U.S. 1, 8 (2013) (reasoning that approaching and knocking is "no more than any private citizen might do" (quoting *Kentucky v. King*, 563 U.S. 452, 469 (2011))). Plaintiff does not claim that Officer Perrone then entered his home—instead, Plaintiff argues that "the bullet discharged by Defendant Perrone constitutes an unlawful entry into Plaintiff's property, as the bullet serves as an extension of the Defendant in this matter." ECF No. 1, at 15. Plaintiff characterizes the bullet's entry into his corridor as "depriv[ing] . . . his rights to be free from such unlawful searches and seizures." ECF No. 1, at 7.

This claim cannot survive dismissal. Plaintiff offers no authority to support interpreting the bullet as a "search." *See* ECF No. 1. Indeed, the bullet "obviously could not 'look,' 'explore,' or 'examine,' nor did its entry facilitate such conduct." *See Denning ex rel. Denning v. Metropolitan Gov't of Nashville*, 330 Fed. App'x 500, 505 (6th Cir. 2009). Plainly, then, the bullet entering Plaintiff's home cannot constitute a "search" within the purview of the Fourth Amendment. To the extent Plaintiff is taking issue with the bullet's "seizure" of his dog, that matter is addressed by his claim for unlawful deprivation of property. Accordingly, Plaintiff's unlawful entry claim against Officer Perrone must be dismissed.

**B.  Excessive Force**

Plaintiff argues that Officer Perrone "us[ed] excessive force against the Plaintiff to summarily deprive him of his property rights in possessing his dog." ECF No. 1, at 12. However,

---

[7] Defendants note the exigent circumstances of the reported burglary, *see* ECF No. 6, at 7, but the Court's findings do not require it to reach that claimed exception.

the Fourth Amendment protects "the right of the *people*" to be free from unreasonable searches and seizures—it does not safeguard any independent right for dogs, which are considered property for purposes of the Fourth Amendment. *See* U.S. Const. amend. IV (emphasis added); *Carroll v. County of Monroe*, 712 F.3d 649, 651 (2d Cir. 2013) (framing the killing of a companion animal as a seizure of property); *Powell v. Johnson*, 855 F. Supp. 2d 871, 874 (D. Minn. 2012) ("Plaintiffs cannot bring an excessive-force claim on [a dog's] behalf."). Moreover, Plaintiff was not home at the time of the incident to be subjected to any purportedly unlawful "seizure" of his person, and the deprivation of property is addressed in a separate claim. Any allegation of excessive force in the deprivation of Plaintiff's property speaks to the lawfulness of that seizure—it would not constitute a separate claim in itself. *See, e.g.*, *Powell*, 855 F. Supp. 2d at 874 ("[T]he so-called excessive force bears only on whether [the dog] was unreasonably *seized* in violation of the Fourth Amendment."). The excessive force claim against Officer Perrone must therefore be dismissed.

C.  **Due Process Violations**

Plaintiff asserts that Officer Perrone deprived him "of due process in pursuing a lawsuit . . . [and] by disposing of [the dog's] body without consent nor [sic] authority, by unlawfully converting [the dog] into state hands, and by falsifying reports and findings surrounding her demise." ECF No. 1, at 13. To the extent Plaintiff is asserting violations of substantive and procedural due process, both claims fail.

Any substantive due process claim fails because Plaintiff's deprivation is properly—and already—addressed under the Fourth Amendment. The Supreme Court has instructed that, "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.' " *Albright v.*

*Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Here, Plaintiff brings a claim for unlawful deprivation of property under the Fourth Amendment. Given the Fourth Amendment's explicit protections, Plaintiff cannot also contest the deprivation of that property more broadly as a violation of his substantive due process rights.

Any procedural due process claim fails for a lack of factual pleading. The Supreme Court has held that "an unauthorized deprivation of property by a state employee does not constitute a violation of [procedural due process] if a meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (cited by *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 882 (2d Cir. 1996) (contrasting "claims based on established state procedures" with "claims based on random, unauthorized acts")). Plaintiff does not explain how he was barred from any postdeprivation remedy—rather, he simply alleges that Officer Perrone and others "conspired" to deprive him of the opportunity to file a lawsuit. ECF No. 1, at 13. At most, Plaintiff claims that Officer Perrone was involved in "falsifying reports and findings surrounding [the dog's] demise." *Id.* Plaintiff cannot adequately claim a violation of procedural due process where he fails to plead facts regarding his postdeprivation remedies.

## CONCLUSION

For the reasons stated, Defendants' Motion for Partial Dismissal (ECF No. 4) is GRANTED. All claims against the City of Rochester and Chief Ciminelli are DISMISSED, and the claims of unlawful entry, excessive force, and due process violations against Officer Perrone are also DISMISSED. The only remaining claim is against Officer Perrone for unlawful deprivation of property. The Clerk of Court is directed to terminate Defendants Ciminelli and the City of Rochester as parties to this action.

IT IS SO ORDERED.

Dated: January 8, 2018
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court